IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-79803 |
| SUSAN PISTILLO, | CHAPTER: 7 |
| Debtor. | |
| PHH MORTGAGE CORPORATION, SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC AS ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR IXIS REAL ESTATE CAPITAL TRUST 2006-HE3 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HE3, | CONTESTED MATTER |
| Movant, | |
| v. | |
| SUSAN PISTILLO, Debtor, | |
| Respondent. | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC as attorney-in-fact for Deutsche Bank National Trust Company, as Trustee for Ixis Real Estate Capital Trust 2006-HE3 Mortgage Pass Through Certificates, Series 2006-HE3 has filed a Motion to Compel Debtor to Surrender Real Property Pursuant to Statement of Intention ("Motion") and related papers with the Court seeking an Order Compelling Debtor to Surrender Real Property.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 10:15 A.M., on November 5, 2020.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court

1

to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.

/s/Brian K. Jordan
Brian K. Jordan, Bar No.: 113008
Counsel for Creditor PHH
Mortgage Corporation, successor by
merger with Ocwen Loan Servicing, LLC,
as attorney-in-fact for Deutsche Bank
National Trust Company, as Trustee for
Ixis Real Estate Capital Trust 2006-HE3
Mortgage Pass Through Certificates,
Series 2006-HE3
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

140383.06133/123931193v.1

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-79803 |
| SUSAN PISTILLO, | CHAPTER:  7 |
| Debtor. | |
| PHH MORTGAGE CORPORATION, SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC AS ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR IXIS REAL ESTATE CAPITAL TRUST 2006-HE3 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HE3, | CONTESTED MATTER |
| Movant, | |
| v. | |
| SUSAN PISTILLO, Debtor, | |
| Respondent. | |

**MOTION TO COMPEL DEBTOR TO SURRENDER
REAL PROPERTY PURSUANT TO STATEMENT OF INTENTION**

Pursuant to 11 U.S.C. Section 521(a)(2)(B) and in accordance with Susan Pistillo's ("Debtor") Statement of Intention (the "Statement of Intention"), PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC as attorney-in-fact for Deutsche Bank National Trust Company, as Trustee for Ixis Real Estate Capital Trust 2006-HE3 Mortgage Pass Through Certificates, Series 2006-HE3 ("Creditor"), hereby submits its Motion to Compel Debtor to Surrender Real Property Pursuant to Statement of Intention ("Motion to Compel") requesting

3

that this Court enter an order compelling Debtor to surrender to Creditor the real property located at 15 Princeton Avenue, Hewitt, New York 11557 (the "Property"). Creditor's Motion to Compel is supported by the arguments and authorities cited herein, the record before the Bankruptcy Court, and the concurrently filed Request for Judicial Notice. The undersigned states the following under penalty of perjury in support of its Motion to Compel.

## PRELIMINARY STATEMENT

This Court should grant Creditor's Motion to Compel based on Debtor's filings/statements in the present case made under the penalty of perjury and Debtor's post-discharge efforts to thwart Creditor's attempts to foreclose upon the Property. As explained more fully below: (i) after indicating an intent to the surrender the Property in the present bankruptcy case and obtaining a Chapter 7 discharge based on the same, Debtor improperly commenced a quiet title action in New York Supreme Court, County of Nassau and has repeatedly advanced inconsistent positions in the 2008 Foreclosure Action and 2017 Quiet Title Action (defined below) in direct contravention of Debtor's sworn Statement of Intention in Debtor's bankruptcy case in which she engineered a "no asset" case; (ii) Creditor will be unduly prejudiced if the Court denies the Motion to Compel and Debtor will have been permitted to turn her Chapter 7 Discharge into a sword to attack her Creditor as opposed to the shield the Discharge afforded by the Bankruptcy Code; (iii) the Bankruptcy Court is the appropriate court to compel Debtor to act in accordance with representations she made to this Court under penalty of perjury in her Statement of Intention; and (iv) since receiving her discharge and physically and constructively abandoning the Property, Debtor has refused to surrender the Property and continues to improperly assert rights to the Property.

Accordingly, the Court should grant Creditor's Motion to Compel and enter an Order compelling Debtor to surrender the Property in accordance with her filings in the present

4

bankruptcy case, her sworn statements, and her Statement of Intention filed herein under the penalty of perjury.

## I.     FACTUAL BACKGROUND

### A.     The Loan

1.     On or about September 26, 2006, Debtor and Michael Marcinanis (together the "Borrowers"), obtained a loan in the principal amount of $441,000.00, dated September 26, 2006, which was executed by Borrowers (the "Loan"). The Loan is memorialized by a note in the amount of $441,000.00, dated September 26, 2006, which was executed by Borrowers (the "Note"). The original Note is indorsed in blank without recourse and is in the physical possession of Creditor. True and correct copies of the Note and Mortgage are attached as Exhibit A to the Request for Judicial Notice ("RJN") filed concurrently herewith.

2.     As security for the Loan, Borrowers executed, acknowledged, and delivered a mortgage dated September 26, 2006, in favor of Rose Mortgage, Inc. (the "Mortgage"), encumbering the Property. The Mortgage was duly recorded in the Office of the Nassau County Clerk on October 17, 2006, under Liber 31098 at Page 692. *Id.*

3.     On January 12, 2009, Rose Mortgage, Inc. executed an Assignment of Mortgage to Deutsche Bank National Trust Company, As Trustee for Ixis 2006-HE3 ("DBNTC"), which was recorded in the Office of the Nassau County Clerk's Office on June 29, 2009, under Liber 33996 at Page 971.

4.     On June 22, 2014, DBNTC executed an Assignment of Mortgage to Deutsche Bank National Trust Company, as Trustee for Ixis Real Estate Capital Trust 2006-HE3 Mortgage Pass Through Certificates, Series 2006-HE3 ("Investor") recorded on July 17, 2014, under Liber

5

M39805 at Page 673 in the Office of the Nassau County Clerk's Office. True and correct copies of the Assignments of Mortgage are attached as Exhibit B to the RJN.

5.     PHH Mortgage Corporation ("PHH"), successor by merger to Ocwen Loan Servicing, LLC ("OLS"),[1] is the current servicer of the Loan held by Investor. *See* RJN, Exhibit C.

6.     Borrowers failed to make the monthly payment due on April 1, 2008, and have failed to make all subsequent payments due thereafter. Borrowers have been in default under the terms of the Note and Mortgage since April 2008.

**B.     Debtor's 2010 Bankruptcy Case**

7.     On July 6, 2010, Debtor filed a Chapter 7 petition ("2010 Bankruptcy Petition") in the United States Bankruptcy Court for the Northern District of Georgia at Case Number 10-79803-MHM ("2010 Bankruptcy Case"), which stayed the 2008 Foreclosure Action (defined below). The 2010 Bankruptcy Petition, Schedule A, listed the Property as her ***former*** residence, and Debtor's Statement of Intention also identified the Property as "Former Residence" and stated Debtor's intention to surrender the Property to OLS, the loan servicer at the time, as the creditor. Debtor did not claim the Property as exempt and proposed to surrender the Property.  Further, the 2010 Bankruptcy Petition identified Debtor's address as 312 Addison Lane, John's Creek, GA 30005 and listed OLS, the loan servicer at the time, as the holder of a secured claim based on the Mortgage.  Moreover, the Chapter 7 Trustee's Report of No Distribution included the Property as one of the assets abandoned by the bankruptcy estate.

---

[1] On June 1, 2019, OLS merged into PHH Mortgage Corporation.  Publicly filed documents reflecting the merger (a certificate of merger filed in New Jersey, where PHH is incorporated, and a certificate of merger filed in Delaware, where OLS was incorporated) are attached as Exhibit C to the RJN.

140383.06133/123931193v.1

8.    On April 21, 2011, the Bankruptcy Court entered the Discharge of Debtor(s) with Order Approving Trustee's Report of No Distribution, Closing Estate and Discharging Trustee ("2011 Discharge Order").  Thus, Debtor received a Chapter 7 discharge, which extinguished her personal liability on the Note and Mortgage, and also surrendered her interest and ownership rights in the Property. True and correct copies of the Debtor's 2010 Bankruptcy Petition, this Court's Docket in the 2010 Bankruptcy Case, which reflects the Chapter 7 Trustee's Report of No Distribution dated September 10, 2010, and the 2011 Discharge Order are attached as Exhibit D to the RJN.

### C.    Debtor's 2016 Chapter 13 Bankruptcy Case

9.    After obtaining her Chapter 7 discharge,

10.    on July 27, 2016, Debtor filed a Chapter 13 bankruptcy petition ("2016 Bankruptcy Petition") in the United States Bankruptcy Court for the Northern District of Georgia, Case Number 16-62944-CRM ("2016 Bankruptcy Case"), which imposed another automatic stay. The Chapter 13 2016 Bankruptcy Case was dismissed and subsequently closed on January 3, 2017.

11.    Debtor did not list the Property in her 2016 Bankruptcy Petition as she had previously surrendered her interest in the Property and obtained a discharge per the 2011 Discharge Order.  True and correct copies of the Debtor's 2016 Bankruptcy Petition, the Bankruptcy Court's Docket in the 2016 Bankruptcy Case and the 2017 Discharge Order are attached as Exhibit E to the RJN.

### D.    2008 Foreclosure Action

12.    On August 29, 2008, Creditor's predecessor-in-interest, DBNTC, commenced an action to foreclose the Mortgage under Index No. 16378/2008 in Nassau County Supreme Court, State of New York (the "2008 Foreclosure Action") by filing a Summons and Complaint, together

7

with a Notice of Pendency with the Nassau County Clerk's Office. Borrowers were duly served

with the Summons and Complaint on September 6, 2008.  A true and correct copy of the Clerk's

Minutes from the 2008 Foreclosure Action are attached as Exhibit F to the RJN.

13.    On September 30, 2008, Borrowers filed an Answer in the 2008 Foreclosure

Action.  *See* RJN, Exhibit F.

14.    On July 16, 2009, DBNTC filed a Motion for Summary Judgment ("MSJ").  *See*

RJN, Exhibit F.

15.    On December 11, 2009, the state court issued a Decision and Order finding that

DBNTC established its *prima facie* entitlement to foreclose and directing DBNTC to produce the

original Note for inspection by the state court and opposing counsel, so the state court could grant

the MSJ.

16.    On November 2, 2010, DBNTC produced the original Note for the state court's

inspection. However, the state court never entered the Order of Reference attached to the

DBNTC's MSJ.  *See* RJN, Exhibit F.

17.    Debtor's 2011 Bankruptcy Case stayed the 2008 Foreclosure Action from July 6,

2010 until April 21, 2011.

18.    On September 13, 2012, the state court mistakenly issued a 90-Day Conditional

Order directing DBNTC to file a note of issue or judgment of foreclosure and sale or else the

matter would be dismissed as abandoned even though the state court had not yet issued the Order

of Reference, and, thus, DBNTC could not proceed with a judgment of foreclosure and sale.  *See*

RJN Exhibit F.  The 2008 Foreclosure Action was marked "disposed" as of August 1, 2012.

19.    Debtor's 2016 Bankruptcy Petition, filed on July 27, 2016, imposed another

automatic stay until Debtor was discharged on January 3, 2017.

20.     On March 2, 2018, Creditor moved to vacate the dismissal of the 2008 Foreclosure Action and to restore the case to the state court's active calendar ("Motion to Restore").  *See* RJN, Exhibit F.

21.     On June 18, 2018, the state court issued a Decision and Order denying Creditor's Motion to Restore. A true and correct copy of the June 18, 2018 Decision and Order is attached as Exhibit G to the RJN.

22.     On March 5, 2020, Creditor filed a Notice of Entry and Notice of Appeal of the Order denying Creditor's Motion to Restore. True and correct copies of the Notice of Entry and Notice of Appeal are attached as Exhibit H to the RJN.  Creditor requested two (2) enlargements of time to perfect the appeal, which the Appellate Court granted.  As such, Creditor's deadline to perfect this appeal is currently November 2, 2020.

23.     On March 17, 2020, Creditor filed a Motion to Reargue the state court's Order denying the Motion to Restore and seeking to restore the 2008 Foreclosure Action to the active calendar ("Motion to Reargue"). The Motion to Reargue was returnable on September 2, 2020 but was adjourned to November 2, 2020 after Debtor filed Opposition on September 1, 2020.  True and correct copies of the Motion to Reargue and Debtor's Opposition to Motion to Reargue are attached as Exhibit I to the RJN.

### E.     2017 Quiet Title Action

24.     On February 7, 2017, Borrowers commenced a quiet title action pursuant to RPAPL § 1501(4) by filing a Summons and Complaint ("QT Complaint") in the Nassau County Supreme Court, State of New York, at Index No. 601072/2017 ("Quiet Title Action"), seeking to discharge DBNTC's Mortgage based on the alleged expiration of the statute of limitations to foreclose.  A

true and correct copy of the QT Complaint and WebCivil Supreme – eFiled Documents Detail in the Quiet Title Action are attached as Exhibit J to the RJN.

25.     Debtor is a named plaintiff in the QT Complaint even though she previously surrendered her 50% interest in the Property on April 21, 2011, due to the Discharge Order and based on her sworn Statement of Intention.  *See* RJN, Exhibit D.

26.     Borrowers' QT Complaint also incorrectly named DBNTC, the Investor's predecessor-in-interest, as the defendant – the wrong party – because the Investor has been the holder of the Loan since 2014, which was made public via the Assignment of Mortgage to Investor recorded on July 11, 2014.  *See* RJN, Exhibit J.

27.     On April 5, 2017, the Investor's prior counsel, Leopold, filed a Notice of Appearance and mistakenly failed to file an Answer in the Quiet Title Action.  *See* RJN, Exhibit J.

28.     On January 12, 2018, Borrowers filed a Motion for Default Judgment, the Investor filed opposition on March 2, 2018, and Borrowers filed a reply.  *See id*.

29.     On April 16, 2018, the state court granted Borrowers' Motion for Default Judgment in the Quiet Title Action ("QT Default Judgment Order").  *See* RJN Exhibit J. The QT Default Judgment Order was entered on April 25, 2018.  *See id*.

30.     On June 13, 2018, the state court entered an Order discharging the Investor's Mortgage (the Order incorrectly identifies DBNTC instead of the Investor) only with respect to Lot 21, and then on June 29, 2018, the state court entered an Amended Order discharging the Investor's Mortgage with respect to Lots 21, 22, and 23 even though the QT Complaint never included Lots 22 and 23 in its request for relief and was never amended.  True and correct copies of the Order discharging the Investor's Mortgage with respect to Lot 21 and the Amended Order

10

discharging the Investor's Mortgage with respect to Lots 21, 22, and 23 are attached as Exhibit K to the RJN.

31.     On September 12, 2018, the Investor filed an Order to Show Cause, seeking to vacate the QT Default Judgment Order, seeking leave to file a late answer and to enjoin Borrowers' transfer or sale of the Property. On October 15, 2018, Borrowers filed an Opposition, and on October 25, 2018, the state court issued a Decision and Order denying the Investor's Order to Show Cause ("QT OSC Denial Order").  A Notice of Entry of the QT OSC Denial Order was filed on November 2, 2018.  True and correct copies of the QT OSC Denial Order and Notice of Entry are attached as Exhibit L to the RJN.

### F.     Pending Appeal of QT OSC Denial Order

32.     On November 20, 2018, the Investor filed a Notice of Appeal of the QT OSC Denial Order (the "QT Appeal").  The Investor also filed a request to enlarge the time to perfect the QT Appeal, and the Appellate Division, Second Department ("Second Department") issued an Order granting an enlargement to July 19, 2019. Thus, based on the enlargement, the time to perfect the QT Appeal expired on July 19, 2019.

33.     On March 14, 2019, the Creditor transferred handling of the Borrowers' Loan from Leopold to RAS Boriskin, LLC ("RAS") as part of a large, voluminous transfer of 545 cases.

34.     On or about September 17, 2019, this matter was referred to Blank Rome LLP ("Blank Rome").  Blank Rome then proceeded to obtain the relevant documents, including the 2008 Foreclosure Action documents, the clerk's minutes, the Quiet Title Action documents, and the Creditor's internal documents to determine what had transpired in both actions and what remedies were potentially available.

11

35.    Upon information and belief and information provided by RAS, Blank Rome determined that when the handling of the matter was transferred to RAS, RAS was not informed of the Quiet Title Action or the pending QT Appeal, and as a result, RAS failed to timely perfect the QT Appeal or seek an additional enlargement of time.

36.    On December 24, 2019, the Investor filed a Motion to Vacate the Dismissal of the QT Appeal and Borrowers filed Opposition. On June 3, 2020, the Appellate Division Second Department granted the Investor's Motion to Vacate and extended the Investor's time to perfect the appeal to July 6, 2020.  The Investor perfected the QT Appeal, Borrowers filed Opposition, and the Investor filed a Reply Brief.  As such, the appeal of the QT OSC Denial Order is pending in the Second Department under Docket No. 2018-13767.  True and correct copies of the Order vacating the dismissal of the QT Appeal, the Investor's Appellant's Brief, Borrowers' Respondents' Brief and Investor's Reply Brief are attached as Exhibit M to the RJN.

37.    The Creditor (on behalf of the Investor) subsequently filed a motion to reopen the above-captioned closed bankruptcy case ("Motion to Reopen") to file a motion to (i) compel the enforcement of Debtor's surrender of the Property pursuant to her Statement of Intention, wherein the Debtor represented under penalty of perjury that she would surrender her rights to the Property; and (ii) hold Debtor in contempt of this Court's 2011 Discharge Order.  Borrower did not oppose the Motion to Reopen, and this Court granted the Motion to Reopen on September 24, 2020.

38.    Despite being on notice of Creditor's position that Debtor surrendered the Property in the instant Chapter 7 as indicated in the Motion to Reopen, Debtor continues to vigorously contest Creditor's foreclosure efforts, as evidenced by her most recent Motion to Dismiss Appeal filed on September 25, 2020.  A true and correct copy of the Motion to Dismiss Appeal is attached as Exhibit N of the RJN.

39.     The Creditor (on behalf of the Investor) now brings this Motion to Compel Debtor to Surrender Real Property Pursuant to Statement of Intention ("Motion to Compel") and also seeks sanctions in the form of the Creditor's reasonable attorney's fees and costs resulting from Debtor's improper litigation activity discussed in detail below.

## **ARGUMENT**

I.    **THE COURT SHOULD ENTER AN ORDER COMPELLING DEBTOR TO SURRENDER THE REAL PROPERTY PURSUANT TO HER SWORN STATEMENT OF INTENTION**

40.     11 U.S.C. Section 521(a) states, in pertinent part, that:

(a) The debtor shall –

***

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the cler a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, withing such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph[.]

41.     With respect to a secured debt, section 521(a)(2) requires a Chapter 7 debtor to surrender the collateral to the secured creditor absent a reaffirmation agreement or redemption of the collateral.  *See In re Taylor*, 3 F.3d 1512, 1516 (11th Cir. 1993); *In re Steinberg*, 447 B.R. 355, 358 (Bankr. S.D. Fla. 2011); *In re Linderman*, 435 B.R. 715 (Bankr. M.D. Fla 2009).

13

42.    "Surrender provides that a debtor surrenders the collateral to the lienholder who then disposes of it pursuant to the requirements of state law." *In re Taylor*, 2 F.3d at 1515 n.2.  By filing a statement of intention to surrender collateral, the debtor agrees to make that collateral available to the secured creditor and agrees to cede his possessory rights in that collateral within the timeframe set forth in section 521(a)(2)(B).  *See In re Cornejo*, 342 B.R. 834, 837 (Bankr. M.D. Fla. 2005); *Pratt v. General Motors Acceptance Corp. (In re Pratt)*, 462 F..3d 14, 18-19 (1st Cir. 2006).

43.    "In *Taylor*, the 11th Circuit Court of Appeals has interpreted section 521 of the Bankruptcy Code to mean that the Debtor's performance of the stated intention is ***mandatory***." *In re Harris*, 226, B.R. 924, 926 (Bankr. S.D. Fla. 1998) (emphasis added).  "Under *Taylor*, a debtor unwilling to reaffirm and unable to pay off the mortgage obligation is required to indicate an intent to surrender the home and to tender the property to the mortgagee." *In re Steinberg*, ,447 B.R. at 358.

44.    Notably, the Eleventh Circuit has held that where a debtor surrenders her interest in the property to the creditor, the debtor ***cannot*** then oppose the creditor's foreclosure action or seek to enforce rights in that property.  *See In re Failla*, 838 F.3d 1170, 1177 (11th Cir. 2016).  Specifically, in *In re Failla*, the Faillas defaulted on their mortgage and then filed for bankruptcy during the pendency of the creditor's foreclosure action. *Id.*  In the bankruptcy case, the "Faillas admitted that they own the house, that the house is collateral for the mortgage, that the mortgage is valid, and that the balance of the mortgage exceeds the value of the house." *Id* at 1173.  The Faillas also filed a statement of intention under 11 U.S.C. § 521(a)(2) to surrender their house in their bankruptcy, but, subsequently, contested the creditor's foreclosure action. *Id.* at 1173.  As a result, the creditor, filed a motion to compel the Faillas to surrender of the property in the

14

Bankruptcy Court, arguing that the "Faillas' opposition to the foreclosure action contradicted their statement of intention to surrender the house." *Id.* at 1173-1174. The Bankruptcy Court granted creditor's motion to compel surrender and ordered the Faillas to stop opposing the foreclosure action, and the District Court affirmed on appeal. *Id.* at 1174.

45.     The Faillas further appealed to the Eleventh Circuit, and the Eleventh Circuit held that under Section 521(a)(2), the Faillas were required to "perform [their] intention with respect to such property" as stated in debtors' Statement of Intention within thirty (30) days. *Id.* Further, the Eleventh Circuit held that "the district court and the bankruptcy court correctly concluded that the Faillas violated Section 521(a)(2) by opposing Citibank's foreclosure action after filing a statement of intention to surrender their house." *Id.* at 1175. "Compelling the [Faillas] to stop opposing the foreclosure action requires them to honor that declaration. The Faillas may not say one thing in bankruptcy court and another thing in state court." *Id.* at 1178.

46.     In reaching its decision, the Eleventh Circuit explained, as follows:

> ***The concern here is that the Debtor is making a mockery of the legal system by taking inconsistent positions. In an effort to obtain her chapter 7 discharge, the Debtor swears—under the penalty of perjury—an intention to 'surrender' her property.*** In other words, the Debtor is representing to the Court that she will make her property available to the Bank by refraining from taking any overt act that impedes the Bank's ability to foreclose its interest in the property. ***Yet, once she receives her discharge, the Debtor in fact impedes the Bank's ability to foreclose its mortgage.***

*Id.* at 1178 (citing *In re Guerra,* 544 B.R. 707, 710 (Bankr. M.D. Fla. 2016)) (emphasis added). Thus, the Eleventh Circuit agreed that the Faillas' promise to "'surrender' [the property] requires debtors to drop their opposition to a foreclosure action." *Id.* at 1177.[2]

---

[2] The Eleventh Circuit adopted other circuit courts' definition of the word "surrender" to mean "the debtor agreed to make the collateral *available* to the secured creditor . . . to cede his possessory rights in the collateral" (*see In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006)) and "relinquishment of all rights in property, including the possessor right, even if such relinquishment does not always require immediate physical delivery of the property to another" (see *In re White,* 487 F.3d 199, 205 (4th Cir. 2007)).

47.    Here, as in *In re Failla,* pursuant to the 2011 Discharge Order, this Court approved the Chapter 7 Trustee's Report of No Distribution, which included the Property on the list of assets abandoned by the bankruptcy estate. *See* RJN, Exhibit D. The 2011 Discharge Order and the Chapter 7 Trustee's Report of No Distribution were based on **Debtor's sworn representations** in Debtor's Statement of Intention, pursuant to Section § 521(a)(2), that (i) the Property was a "former residence" and "not claimed as exempt"; and (ii) Debtor intended to **surrender** the Property to the Creditor. *See* RJN, Ex. D – 2011 Discharge Order p. 40. Moreover, Debtor had already physically abandoned the Property by moving to Georgia, as confirmed by Debtor's Georgia address identified in the 2010 Bankruptcy Petition. *See id.* at page 1.

48.    Just as in *In re Failla*, the Debtor here contradicted her sworn Statement of Intention and violated 11 U.S.C. § 521(a)(2)(B) by taking an inconsistent position when she challenged the 2008 Foreclosure Action instead of surrendering the Property to the Creditor. In addition, Debtor contradicted her sworn Statement of Intention by taking additional inconsistent positions when she (i) commenced the 2017 Quiet Title Action, where she sought title to the same Property, alleging that **she had possession and right to title**; and (ii) improperly obtained a discharge of her Mortgage. *See* RJN, Exhibit J. Notably and egregiously, Debtor continues to oppose the Investor's attempt to reargue the improper denial of the Motion to Restore the 2008 Foreclosure Action and the Appeal of the OSC Denial Order in the 2017 Quiet Title Action. Debtor's actions are the exact opposite of surrendering or ceding rights to the Property. In fact, Debtor aggressively asserted rights to the Property that she previously surrendered under penalty of perjury. Therefore, Debtor's conduct in this case is even more egregious than the Faillas' conduct.

49.    Because the Debtor did not dispute her Mortgage debt, which she listed on Schedule D, Debtor admitted under penalty of perjury, the validity of that debt and that such debt is secured

16

by the Mortgage.  *See In re MacFarland*, 462 B.R. 857, 881 (Bankr. S.D. Fla. 2011).  In fact, Debtor noted in her Schedule D that "foreclosure proceeding started / account delinquent 180 days past due date," which clearly shows Debtor acknowledged the debt as valid and that she was in default of her obligation to pay.

50.    Consistent with that admission, Debtor filed the Statement of Intention representing the Property would be surrendered to Creditor.

51.    However, rather than complying with the mandatory dictates of section 521(a)(2)(B) by performing on her Statement of Intention and surrendering the Property to Creditor, Debtor received a bankruptcy discharge from this Court and then began, and continues, to vigorously oppose Creditor's efforts to foreclose on the Property.

52.    In doing so, Debtor has retained the Property without reaffirming or redeeming and obtained a "head start" and not a "fresh start" because she has effectively converted the secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure Creditor's Property.  *See In re Taylor*, 3 F.3d at 1516.

53.    Debtor has maliciously engineered a no-asset bankruptcy through her manipulative actions. If Debtor's bankruptcy schedules had been consistent with her pre-petition bankruptcy position as to the validity of the loan documents, Debtor would have listed on Schedule D that the mortgage claim was disputed.  The Chapter 7 trustee could have then administered the Property for the benefit of the Bankruptcy Estate.[3]

54.    Debtor has obtained the fullest benefit of a Chapter 7 bankruptcy proceeding—a discharge in a no-asset case in which Debtor was able to retain all property—without the attendant

---

[3] To explain, because the Property was not claimed by the Debtor as exempt, the chapter 7 trustee would have been able to stand in the shoes of Debtor and resolve the dispute for the benefit of the Bankruptcy Estate.

140383.06133/123931193v.1

and mandatory burden of complying with section 521(a)(2).  These manipulative actions amount to fraud upon the Court.

55.     The Court has the power under 11 U.S.C. Section 105(a) to compel Debtor to surrender the Property to comply with her sworn Statement of Intention and the 2011 Discharge Order and should do so here.  *See In re Harris*, 226 B.R. at 925.  This would include (i) ceasing all challenges to the 2008 Foreclosure Action; (ii) ceasing Debtor's prosecution of the Quiet Title Action and vacating the Amended Default Judgment Order discharging the Mortgage; and (iii) surrendering the Property to the Creditor as she had promised.

56.     Moreover, the Bankruptcy Court's 2011 Discharge Order granting a Chapter 7 discharge to Debtor and approving the Trustee's Report of No Distribution constitutes a final judgment on the merits as a matter of law.  As such, *res judicata* and judicial estoppel also preclude Debtor from asserting any contrary positions after the 2011 Discharge Order.  *See In re Bateman,* 331 F.3d 821 (11th Cir. 2003).  Since Debtor never appealed the 2011 Discharge Order or reopened this 2010 Bankruptcy Case and subsequently filed a new 2016 Bankruptcy Case, where she did not even mention the Property or seek to alter her prior surrender of the Property, Debtor must surrender the Property as required by 11 U.S.C. § 521(a)(2)(B).  *See* RJN, Exhibits D and E. Therefore, Debtor no longer has the right to (i) contest the 2008 Foreclosure Action, including the prior Motion to Restore and the pending Motion to Reargue, and/or (ii) prosecute the Quiet Title Action, including contesting the QT Appeal.

57.     Debtor's improper conduct is "making a mockery" of the legal system by taking inconsistent positions.

18

58.    As such, this Court has the authority to direct Debtor to comply with her sworn Statement of Intention and the 2011 Discharge Order, which mandated that she surrender her rights in the Property.

## **CONCLUSION**

For all the foregoing reasons, Creditor respectfully requests that this Court issue an Order granting this Motion to Compel in its entirety.  Additionally, Movant seeks an award of reasonable attorney fees and costs incurred in connection with filing the Motion to Reopen and instant Motion to Compel and any other relief the Court deem necessary and just.

Respectfully submitted,

/s/Brian K. Jordan
Brian K. Jordan, Bar No.: 113008
Counsel for Creditor PHH
Mortgage Corporation, successor by
merger with Ocwen Loan Servicing,
LLC, as attorney-in-fact for Deutsche
Bank National Trust Company, as
Trustee for Ixis Real Estate Capital Trust
2006-HE3 Mortgage Pass Through
Certificates, Series 2006-HE3
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 10-79803 |
| SUSAN PISTILLO, | CHAPTER:  7 |
| Debtor. | |
| PHH MORTGAGE CORPORATION, SUCCESSOR BY MERGER TO OCWEN LOAN SERVICING, LLC AS ATTORNEY-IN-FACT FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR IXIS REAL ESTATE CAPITAL TRUST 2006-HE3 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HE3, | CONTESTED MATTER |
| Movant, | |
| v. | |
| SUSAN PISTILLO, Debtor, | |
| Respondent. | |

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on October 12, 2020, I caused the MOTION TO COMPEL DEBTOR TO SURRENDER REAL PROPERTY PURSUANT TO STATEMENT OF INTENTION which was filed in this bankruptcy matter on October 12, 2020, to be served in the manner indicated:

20

140383.06133/123931193v.1

The following parties have been served by the Court by the virtue of their participation in the CM/ECF system:

Kevin J. Cowart

S. Gregory Hays

**The following parties have been served via U.S. First Class Mail:**

Susan Pistillo                                   Susan Pistillo
312 Addison Lane                          420 Wyndham Farms Way
John's Creek, GA 30005              Milton, GA 30004

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE**

**AND CORRECT.**

DATED: October 12, 2020

/s/Brian K. Jordan_____
Brian K. Jordan, Bar No.: 113008
Counsel for Creditor PHH
Mortgage Corporation, successor by
merger with Ocwen Loan Servicing,
LLC, as attorney-in-fact for Deutsche
Bank National Trust Company, as
Trustee for Ixis Real Estate Capital Trust
2006-HE3 Mortgage Pass Through
Certificates, Series 2006-HE3
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: bjordan@aldridgepite.com